## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANET WILLIAMS, RICARDO WALKER, CHARLES WILLIAMS, LANDON NICHOLSON, BRANDON WRIGHT, MARGO PORTER, and DEBRA MILLS, | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 3:2006-217 |
| Plaintiffs, | )<br>) |
| v. | )  JUDGE GIBSON<br>) |
| RAMADA INN, | )<br>) |
| Defendant. | ) |

### MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This case comes before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### JURISDICTION

This Court has personal jurisdiction over the parties and possesses original subject matter jurisdiction pursuant to 42 U.S.C. §§ 1331 and 1332 and the Civil Rights Act of 1964, 42 U.S.C. § 2000a-6. This Court also has supplemental jurisdiction over the claim under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, pursuant to 28 U.S.C. 1367(a). Venue is proper is accordance with 28 U.S.C. § 1391(b). For the reasons stated herein, Defendant's motion is denied.

### FACTUAL HISTORY

The seven African American Plaintiffs allege in their complaint that on or about October 6, 2004, all of them "stopped at the Wooden Nickel Pub," a restaurant owned and operated by Defendant,

Ramada Inn, "in order to get something to eat." Complaint (Document No. 1) ¶¶ 13-14. Plaintiffs then "seated themselves," but they "were not waited upon." Complaint ¶ 15. "After waiting approximately 5 minutes, Plaintiffs Ricardo Walker and Charles Williams went to the bar located in the restaurant and requested menus from the bartender/waitress." Complaint ¶ 16. The bartender/waitress informed the two Plaintiffs that she would need "to see their identification even after they informed her that they were not interested in buying alcoholic beverages" and that they only wanted food. Complaint ¶¶ 17-19. "Plaintiffs Ricardo Walker and Janet Williams showed their identification," but "they were still refused menus unless and until each of the Plaintiffs produced their identification." Complaint ¶ 20. "Plaintiffs were informed that the need for identification was 'manager's rules.'" Complaint ¶ 21. "Another patron in the Wooden Nickel Pub, Lance Trott, a white male, was served alcohol and food without being asked for or having to present his identification." Complaint ¶ 24. "Other white patrons of the...Wooden Nickel Pub were not requested, nor required, to produce identification in order to obtain menus." Complaint ¶ 25. "Plaintiffs believe...that Defendant's actions were a result of [the Plaintiffs being] African American," and that Defendant's "manager's rules" were "mere pretext for discrimination." Complaint ¶¶ 26-27.

"Approximately two weeks later, Plaintiffs Margo Porter and Debra Mills stopped at the Ramada Inn's Wooden Nickel Pub in order to get something to eat." Complaint ¶ 28. Plaintiffs, obeying signs in the Pub, "waited in a designated area to be seated." Complaint ¶ 29. "Plaintiffs were not waited upon or seated, and had to flag-down the waitress in order to request service." Complaint ¶ 30. Plaintiffs asked for menus, and they "were told that they needed to produce identification." Complaint ¶ 31. "Plaintiffs did not request any alcoholic beverages," nor were they "informed why

2

identification was necessary" to receive menus in order to "place an order for food." Complaint ¶ 32-

33. "[W]hite patrons of the Pub were not requested, nor required, to produce identification in order to

obtain menus." Complaint ¶ 34.

## ANALYSIS

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6):

the district court [is] required to accept as true all allegations in the complaint and all
reasonable inferences that can be drawn from them after construing them in the light
most favorable to the non-movant. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d
Cir. 1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944
(3d Cir. 1984). In determining whether a claim should be dismissed under Rule
12(b)(6), a court looks only to the facts alleged in the complaint and its attachments
without reference to other parts of the record.

*Jordan v. Fox, Rothschild, O'Brien, & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). "[O]nce a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 1275 S.Ct. 1955, 1969, 167

L.Ed.2d 929, 945 (2007) (citations omitted). A complaint that states "a plausible entitlement to relief"

is the complaint that survives a Rule 12(b)(6) motion as well as satisfies the Rule 8 pleading

requirements. *Id.* at __, 1275 S.Ct. at 1964-65, 1967, 167 L.Ed.2d at 940, 942. It is particularly

important in civil rights suits to dismiss at the pleading stage only if "it appears to a certainty that the

plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim."

*Cubellis v. Costar*, 65 F.R.D. 49, 51 (W.D.Pa. 1974) (citation omitted). In considering a motion to

dismiss, the Court is not deciding the issue of whether a "plaintiff will ultimately prevail" but is

deciding if the plaintiff "is entitled to offer evidence to support [his] claims". *Lake v. Arnold*, 112 F.3d

682, 688 (3d Cir. 1997) (citation omitted); *Nami v. Fauver*, 82 F.3d 63 (3d Cir. 1996).

3

The Plaintiffs allege claims of violations of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-953 (Count I), 42 U.S.C. § 1981 (Count II), and 42 U.S.C. § 2000a, also known as Title II of the Civil Rights Act of 1964 (Count III). Defendant argues in its Motion to Dismiss (Document No. 8-1) and Brief in Support of Its Motion to Dismiss (Document No. 9-1) that 1) Plaintiffs' Title II claim fails because the discrimination suffered by Plaintiffs is not pled as "continuous or ongoing," nor do Plaintiffs "allege a likelihood of future harm," and therefore injunctive relief is unavailable (Document No. 8-1, ¶ 5); 2) Plaintiffs' § 1981 claim fails because they have not alleged that they brought the acts of discrimination to the attention of a manager or supervisory employee (*Id.* at ¶ 8); and 3) Plaintiffs' state law PHRA claim should be dismissed because the PHRA is generally interpreted in accordance with its federal counterparts, so dismissal of the federal claim justifies dismissal of the state claim (*Id.* at ¶ 11).

## TITLE II CLAIM

The limited remedy available under Title II is injunctive relief. 42 U.S.C. § 2000a-3; *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265 (1968). Defendant states in its Brief in Support of its Motion to Dismiss (Document No. 9-1) that because the Plaintiffs did not allege "continuous or ongoing" discriminatory conduct or the likelihood of future harm, the Plaintiffs are not entitled to the injunctive relief available under Title II. *See Joseph v. New York Yankees Partnership*, No. 00 Civ. 2275 (SHS), 2000 WL 1559019, 2000 U.S. Dist. LEXIS 15417 (S.D.N.Y., Oct. 19, 2000). However, unpublished opinions from other district courts are not binding on this court. Moreover, the *Joseph* decision does not provide much assistance to this Court in resolving the case *sub judice* because the defendants in *Joseph* were granted summary judgment,

4

whereas, the Defendant in this case is seeking to have the claims dismissed prior to the Plaintiffs having the opportunity to pursue discovery.

*Joseph* relied on a Supreme Court case concerning a police officer who, after pulling over a man named Lyons, illegally choked him into unconsciousness and injured his larynx. *City of Los Angeles v. Lyons*, 461 U.S. 95, 97-98, 103 S.Ct. 1660, 1663, 75 L.Ed.2d 675, 681 (1983). The Court stated that, because there was no "real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part," the plaintiff could not recover in the form of injunctive relief. *Id.* at 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675, 686. The logic was that if Lyons obeyed all laws then he would not be in a position to be accosted by the police again, and therefore there was no need for injunctive relief. *Id.* at 103, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 685 (citing *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 676, 38 L.Ed.2d 674, 684 (1974) ("prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law")).

The Court of Appeals for the Third Circuit has held that a *prisoner* who did not (and could not) allege a likelihood of being subjected to another unconstitutional prison hearing did not have standing to sue for injunctive relief. *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987). However, the same reasoning applied in *Brown* as in *Lyons* because the allegedly unconstitutional acts were committed by the state. This is a special concern for the federal courts because of federalism principles which require a balance between the federal and state governments. *Lyons*, 461 U.S. 95, 112, 103 S.Ct. 1660, 1670-71, 75 L.Ed.2d 675, 691.

5

In the case *sub judice*, Plaintiff is not bringing an action against a state actor, so the principles

of federalism applied in those cases are irrelevant to the current action. Instead, this Court finds several

cases concerning Title II of the Civil Rights Act from district courts in other circuits to be more

persuasive and more applicable to the facts and circumstances of the case *sub judice*.

"There is no requirement that plaintiff allege a continuing course of conduct or pattern of

discrimination. It is sufficient that she allege that defendant has engaged in any act or practice

prohibited by the Act." *Hughes v. Marc's Big Boy*, 479 F.Supp. 834, 837 (E.D.Wis. 1979). *See also*

*United States v. Glass Menagerie, Inc.*, 702 F.Supp. 139, 142 (E.D.Ky. 1988); *King v. Greyhound*

*Lines, Inc.*, 656 P.2d 349, 351 (Ct.App.Or. 1982); *Hopson v. White Castle Systems, Inc.*, No. 86 C 6322,

1987 WL 7834, at *2, 1987 U.S. Dist. LEXIS 1802, at *6 (N.D.Ill Mar 05, 1987). The language of the

statute is clear: "[n]o person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or

attempt to deprive *any* person of *any* right or privilege secured by section 2000a or 2000a-1 of this

title...." 42 U.S.C. § 2000a-2 (emphasis added). Additionally,

[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in *any* act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved... (emphasis added).

42 U.S.C. § 2000a-3(a). The statute plainly states that "any" act will allow the aggrieved individual

to institute a civil action for preventive relief. This seems consistent with the views expressed in

*Newman*:

When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only. When a

6

plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.

*Newman*, 390 U.S. 400, 401-02, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265 (1968). Because the plaintiff in a Title II action is seeking an injunction as a "private attorney general," there is no need for such a plaintiff to allege that he has been subjected personally to "continuous or ongoing" discrimination by the defendant. It is enough for the plaintiff to allege that *any* singular act prohibited by Title II was practiced by the defendants. *Hughes*, 479 F.Supp. at 837. *Cf.* 42 U.S.C. § 2000a-5 (permitting Attorney General to commence a civil action when he "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter"); *Newman*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1965 n.2 (citing 42 U.S.C. § 2000a-5).

In the present case, Plaintiffs have alleged two distinct instances of discrimination. Either of these acts alone would constitute "any act," and therefore be the basis of a claim for an injunction, under the statute.[1] To rule otherwise would cause a loss of the deterrent effect of Title II in that defendants that conduct a great deal of business with interstate travelers, and advertise such business activity, in effect would be immune from Title II suits brought by the same individuals from whom they elicit business. The discriminatory conduct would be allowed as long as it was not directed toward persons who are in a position to frequent the place of public accommodation. Restaurants much like

---

[1]Even if a plaintiff must allege "continuing or ongoing" discriminatory conduct, the fact that there were two distinct occurrences of the allegedly discriminatory conduct may be enough to meet that test. As this Court finds that there need not be any allegation of "continuing or ongoing" discriminatory action, the question will not be addressed.

7

the one in the present case would be free to discriminate against interstate travelers who are unlikely to utilize the facility on a frequent or ongoing basis, and that is inconsistent with the policies behind Title II.

As the subject restaurant owned and operated by the Defendant is located off of the Pennsylvania Turnpike and "serves, and advertises such service to, individuals traveling on the Pennsylvania Turnpike" (Complaint ¶ 9), there is no question that it is a place of public accommodation to be held accountable if Plaintiffs' allegations are ultimately proven. 42 U.S.C. § 2000a. Therefore, there is no reason at this stage of the litigation that Plaintiffs should not be allowed to proceed with seeking the injunction.

This Court is not stating that the facts, as alleged in the complaint, are sufficient for this Court to actually grant an injunction against the Defendant in the present case. As this matter is before the Court on the Defendant's Motion to Dismiss, the question is not whether the Plaintiffs "will ultimately prevail," but whether the Plaintiffs are "entitled to offer evidence to support [their] claims." *Lake v. Arnold*, 112 F.3d at 688. The Defendant's arguments are accurate as far as what the Plaintiffs must produce in order to *prove* their claims. However, Plaintiffs must be afforded an opportunity to obtain evidence through discovery to show that an injunction is warranted. Without some kind of pattern of reoccurring discriminatory conduct or a discriminatory policy on the part of the Defendant, an injunction against the Defendant appears to be unnecessary. Therefore, if, following discovery, the Plaintiffs cannot produce sufficient evidence to show that they are entitled to an injunction, the Defendant may move for summary judgment on the same grounds.

Defendant's Motion to Dismiss Plaintiffs' Title II claim is accordingly denied.

8

## § 1981 CLAIM

Defendant contends in its Brief in Support of its Motion to Dismiss that Plaintiffs' § 1981 claim must fail because Plaintiffs did not allege that it was a manager or supervisor who subjected the Plaintiffs to discriminatory treatment, nor did Plaintiffs allege that they notified a supervisory employee about the differential treatment. Document 9-1, pp. 8-9 (citing *Perry v. Command Performance*, No. 89-2284, 1991 WL 46475, at *3, 1991 U.S. Dist. LEXIS 4019, at *7 (E.D.Pa. March 27, 1991), *aff'd*, 945 F.2d 395 (3d Cir. 1991)).

However, in *Perry*, there was only one instance of discrimination alleged, and the court gave a number of reasons for entering judgment against the plaintiff besides a lack of *respondeat superior* liability in § 1981 actions (such as the fact that there was "no pattern or history of discriminatory actions by Defendant"), which are inapplicable to the case *sub judice*. *Perry*, 1991 WL 46475, at *3, 1991 U.S. Dist. LEXIS 4019, at *6. Additionally, an "employer may be held liable under Section 1981 for the discriminatory acts of a non-management employee if 'the harassment was so pervasive that an inference of constructive knowledge arises.'" *Perry*, 1991 WL 46475, at *3, 1991 U.S. Dist. LEXIS 4019, at *8 (citing *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 904 (11th Cir. 1988)).

Furthermore, courts in other circuits have held:

in a public accommodation case under § 1981, a rule that only actions by supervisors are imputed to the employer would result, in most cases, in a no liability rule. Unlike the employment context it is rare that in a public accommodation settings [sic] a consumer will be mistreated by a manager or supervisor. Most consumer encounters are between consumers and clerks who are non-supervisory employees.

9

*Arguello v. Conoco, Inc.*, 207 F.3d 803, 810 (5th Cir. 2000). *See also City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (employer liability under similar statute, § 1982, for "racial steering" by realtors even though employer's express policy forbade such action).

Even if this Court were to hold that the Plaintiffs must prove that the "bartender/waitress" referenced in the complaint (Complaint ¶¶ 16-18) was a supervisory employee in order to succeed in this case, the Court, in viewing the facts and all reasonable inferences in a light most favorable to the non-moving party, would have to deny the Motion to Dismiss Plaintiffs' § 1981 claim at this stage. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir. 1984). For the purposes of this motion only, Defendant concedes that Plaintiffs have alleged a *prima facie* case. (Document 9-1, p. 8). As such, Plaintiffs are entitled to put forth evidence in support of their claims. *Lake*, 112 F.3d at 688. A "bartender/waitress" could very well be a supervisory employee, and it would be unreasonable to dismiss the claim at the pleading stage before discovery has even taken place. Defendant's application of *Perry* to the facts of the current case is inappropriate in this respect because *Perry* was a case decided after consideration of the evidence. *Perry*, 1991 WL 46475, at *1, 1991 U.S. Dist. LEXIS 4019, at *1.

Defendant's Motion to Dismiss Plaintiffs' § 1981 claim is therefore denied.

## PHRA CLAIM

As the Defendants correctly state in their brief (Document No. 9, pp. 13-14), the PHRA is generally analyzed under the same framework as its federal counterparts. *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999). Therefore, this Court can deny Defendant's Motion to Dismiss Plaintiffs' PHRA claim for the reasons set forth in the analysis of Plaintiffs' federal claims.

However, unlike Title II, an injunction is not the only remedy available under the PHRA. *See Martin v. Safeguard Scientifics, Inc.*, 17 F.Supp.2d 357, 372 (E.D.Pa. 1998) (citations omitted). Defendants did not proffer any argument for dismissal of the Title II claim other than stating that the Plaintiffs were unable to seek injunctive relief, and such an argument is inapplicable to PHRA claims.

For both of the above mentioned reasons, Defendants' Motion to Dismiss Plaintiffs' PHRA claim is denied.

**AND NOW,** this 3ʳᵈ day of August, 2007, after consideration of Defendant's Motion to Dismiss (Document No. 8), and in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss is DENIED. IT IS FURTHER ORDERED THAT the Defendant shall file an Answer in this matter on or before August 24, 2007.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

11